**FILED**

Jan 14 2022

**CLERK, U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
BY        s/ anthonye        DEPUTY

Alex R. Straus, SBN 321366
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Tel.:   (917) 471-1894
Email: astraus@milberg.com

*Plaintiff's Attorney*
*Additional attorneys on signature page*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| TASHA BROWN, individually and on behalf of all others similarly situated, | Civil Action No.:  **'22 CV 54   L   KSC** |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| ZMB ENTERPRISES LLC, a California Limited Liability Company, |  |
| Defendant. |  |

## CLASS ACTION COMPLAINT

Plaintiff Tasha Brown through her undersigned attorneys, brings this Class Action Complaint against Defendant ZMB Enterprises LLC ("Defendant"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys:

1

**CLASS ACTION COMPLAINT**

## NATURE OF THE ACTION

1.      This is a civil class action brought individually by Plaintiff on behalf of consumers who purchased Defendant's Xanrelax and Addall products (the "Xanrelax Products," the "Addall Products," or collectively the "Products"). Defendant warrants that all of the Products are legal for consumers to purchase for their personal use and not for resale.

2.      Defendant's Products, however, are illegal to sell.

3.      Defendant formulates, manufactures, advertises, and sells the Products throughout the United States, including in the States of California and Illinois.

4.      With knowledge of and to capitalize on consumer demand for Xanax, the prescription grade drug, Defendant has intentionally marketed Products with the misleading XanRelax name.

5.      With knowledge of and to capitalize on consumer demand for Adderall, the prescription grade drug, Defendant intentionally marketed Products with the misleading Addall name.

6.      As detailed further below, Defendant's multiple, prominent, and systematic mislabeling of the Products form a pattern of unlawful and unfair business practices that harms the public.

7.      Accordingly, Plaintiff and each of the Class Members have suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices as set forth herein, and seek compensatory damages and injunctive relief.

8.      Plaintiff brings this suit to halt the unlawful sales and marketing of the Products by Defendant and for damages sustained as a result.  Given the massive quantities of the Products sold all over the country, this class action is the proper vehicle for addressing Defendant's misconduct and for attaining needed relief for those affected.

**CLASS ACTION COMPLAINT**

9.      Plaintiff and each of the Class members accordingly suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices set forth herein, and seek compensatory damages, statutory damages, and declaratory and injunctive relief.

## JURISDICTION AND VENUE

10.    This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(d).    The amount in controversy in this class action exceeds $5,000,000, exclusive of interest and costs, and there are numerous Class Members who are citizens of states other than Defendant's states of citizenship.

11.    This Court has personal jurisdiction over Defendant in this matter. Defendant is headquartered in California.  Further, the acts and omissions giving rise to this action occurred in the State of California.  Defendant has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state, and/or marketed, advertised, distributed and/or sold Products, committed a statutory violation within this state related to the allegations made herein, and caused injuries to Plaintiff and putative Class Members, which arose out of the acts and omissions that occurred in the State of California, during the relevant time period, at which time Defendant was engaged in business activities in the state of California.

12.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because Defendant is headquartered within this District and Defendant transacts business and/or has agents within this District and has intentionally availed itself of the laws and markets within this District.

**CLASS ACTION COMPLAINT**

## **PARTIES**

13.    Plaintiff Tasha Brown is a citizen of Illinois who resides in Muddy, Illinois, Saline County.

14.    Defendant ZMB Enterprises LLC is a Limited Liability Corporation with its principal place of business located at 7040 Avenida Encinas, Ste 104, Carlsbad, California, 92011. Defendant's named member on its filing with the California Secretary of State, Statement of information lists its Chief Executive Officer of Ryan Zakeri located at 7040 Avenida Encinas, Ste 104, Carlsbad, California, 92011.

## **FACTUAL ALLEGATIONS**

15.    At all relevant times, Defendant has marketed its Products in a consistent and uniform manner.  Defendant sells the Products in all 50 states on its website and through various distributors.

### ***The Products Contain Illegal Ingredients***

16.    The Products do not meet the definition of a dietary ingredient under section 201(ff) of the federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 321(ff).

17.    One of the ingredients contained on the rear of the XanRelax label is Mytragynine, or more commonly referred to as "Kratom."

/
/
/
/
/
/
/
/

4

18.    All of Defendant's XanRelax Products contain the illegal dietary ingredient Kratom and are, therefore, mislabeled as dietary supplements. Every XanRelax Product explicitly identifies itself as a "Dietary Supplement" on the front of the packaging and also contains a "Supplemental Facts" section on the back of the packaging that is reserved for use solely with dietary supplements.

19.    One of the ingredients contained on the rear of the Addall Products label is Beta-Pheyl-GABA, or more commonly referred to as "Phenibut".

/

/

/

/

**CLASS ACTION COMPLAINT**



20.    All of Defendant's Addall Products contain the illegal dietary ingredient Phenibut and are, therefore, mislabeled as dietary supplements. Every Addall Product explicitly identifies itself as a "Dietary Supplement" on the front of the packaging and also contains a "Supplemental Facts" section on the back of the packaging that is reserved for use solely with dietary supplements.

**CLASS ACTION COMPLAINT**

21.     As the manufacturer and distributor of the Products, Defendant has an affirmative duty to comply with the FDCA, 21 U.S.C. § 301, *et seq.*, as well as any parallel state statute.

22.     Dietary supplements are defined by the FDCA as a "product (other than tobacco) intended to supplement the diet" that contains one or more of the following: (1) vitamins; (2) minerals; (3) herbs or other botanicals; (4) an amino acid; (5) a supplement meant to increase total dietary intake; (6) a concentrate, metabolite, constituent, extract, or combination of any of the listed ingredients. 21 U.S.C. § 321(ff)(1).

23.     Defendant's Products cannot be dietary supplements because they do not meet the definition of a dietary supplement under section 201(ff) of the FD&C Act, 21 U.S.C. 321(ff).

24.     The FDA recently has seized dietary supplements and bulk dietary ingredients that contain Kratom.[1]

25.     The FDA stated the following about Kratom:

> There is substantial concern regarding the safety of kratom, the risk it may pose to public health and its potential for abuse," said Judy McMeekin, Pharm.D., the FDA's Associate Commissioner for Regulatory Affairs. "The FDA will continue to exercise our full authority under the law to take action against these adulterated dietary supplements as part of our ongoing commitment to protect the health of the American people. Further, there are currently no FDA-approved uses for kratom.[2]

---

[1] https://www.fda.gov/news-events/press-announcements/fda-announces-seizure-adulterated-dietary-supplements-containing-kratom (last visited October 20, 2021).
[2] *Id.*

7

**CLASS ACTION COMPLAINT**

26.    The FDA recently stated that products that contain Phenibut are not legal dietary supplements.[3]

> The FDA also issued 3 warning letters to companies whose products are marketed as dietary supplements and labeled to contain phenibut. Phenibut has been found in products labeled as dietary supplements, sometimes marketed for uses such as a sleep aid. Phenibut does not meet the definition of a dietary ingredient Under the Federal Food, Drug, and Cosmetic Act (FD&C Act). Products labeled as dietary supplements that list phenibut as a dietary ingredient are misbranded.
>
> Phenibut is also known as:
> •fenibut
> •phenigam
> •PhGaba
> •Phenigamma
> •Phenygam
> •4-Amino-3-phenylbutanoic acid
> •β-(aminomethyl)benzenepropanoic acid
> •beta-(Aminomethyl)hydrocinnamic acid
> •β-phenyl-γ-aminobutyric acid

27.    The FDA has concluded, based on available evidence, that products such as the Products are excluded from the dietary supplement definition under sections 201(ff)(3)(B)(i) of the FD&C Act, 21 U.S.C. 321(ff)(3)(B)(i). Under those provisions, if an article (such as Kratom or Phenibut) is an active ingredient in a drug product that has been approved under section 505 of the FD&C Act, 21 U.S.C. 355, or has been authorized for investigation as a new drug for which substantial clinical investigations have been instituted and for which the existence of such investigations has been made public, then products containing that substance are outside the definition of a dietary supplement. There is an exception if the substance was

---

[3] https://www.fda.gov/news-events/press-announcements/fda-announces-seizure-adulterated-dietary-supplements-containing-kratom (last visited October 20, 2021).

**CLASS ACTION COMPLAINT**

"marketed as" a dietary supplement or as a conventional food before the new drug investigations were authorized; however, based on the evidence available to the FDA, the FDA has concluded that this is not the case for kratom. The FDA is not aware of any evidence that would call into question its current conclusion that the Products are excluded from the dietary supplement definition under sections 201(ff)(3)(B)(i) of the FD&C Act.

28.     The labels of the Products are therefore misleading because the Products are not dietary supplements.

29.     There was an express promise made by Defendant that Products are "dietary supplements". Based on the label representations and representations on its website, Defendant always sold the Products as a dietary supplement.

30.     Further, Defendant failed to provide FDCA with required NDI notification. Therefore, Defendant's Products are illegal dietary supplements and violated express and implied warranties to Plaintiff and the proposed Class as further alleged herein.

31.     Defendant's conduct is also deceptive, unfair, and unlawful in that it violates the prohibition against the sale of adulterated and misbranded Products under California's Sherman Laws, which adopt the federal labeling regulations as the food and dietary supplement labeling requirements of the state.[4] Cal. Health & Safety Code § 110095 ("All special dietary use regulations and any amendments to regulations adopted pursuant to the federal act, in effect on November 23, 1970, or adopted on or after that date, are the special dietary use regulations of this state."); *Id*. § 110100 ("All food labeling regulations and any amendments to those

---

[4] California's Sherman Food, Drug, and Cosmetic Act, Cal. Health & Saf. Code § 109875 et seq., incorporates into California law all regulations enacted pursuant to the U.S. Food Drug and Cosmetic Act. An act or omission that would violate an FDCA regulation necessarily therefore violates California's Sherman Law. Id. at § 110100.

**CLASS ACTION COMPLAINT**

regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state.").

32.     The introduction of adulterated and misbranded food into interstate commerce is prohibited under the FDCA and the parallel state statute cited in this Complaint.

33.     Plaintiff and Class Members would not have purchased the Products or would have paid less for the Products if they were aware of the misleading labeling of the Products by Defendant.

34.     Defendant intended for Plaintiff and the Class members to be deceived or misled by its deceptive and misleading practices.

35.     Defendant's deceptive and misleading practices proximately caused harm to the Plaintiff and the Class.

36.     Plaintiff and Class members would not have purchased the Products, or would have not paid as much for the Products, had they known the truth about the mislabeled and falsely advertised Products.

37.     Other sellers of Kratom are aware that Kratom is an illegal ingredient and have pleaded with the public on its website to lobby against a nationwide ban.

/
/
/
/
/
/
/
/
/
/

**CLASS ACTION COMPLAINT**

## URGENT: Potential Kratom Ban

**The World Needs Your Help!**

Kratom Vendors/Consumers:

Kratom is under threat and we need your help.

As you may know by now, the FDA is asking the World Health Organization (WHO) and UN Committee to ban kratom internationally. Our team believes that if the FDA is successful, this will lead to the swift ban of kratom in the United States.

**This is a very real threat and one that shouldn't be dismissed.** Between now and August 9th, the FDA is required by the Controlled Substance Act to solicit "comments" about the proposal to ban kratom internationally.

**We need to collect as many positive kratom testimonies as possible before Aug. 9th to discredit the FDA's anti-kratom positions.**

However, because the FDA isn't required to submit all Americans comments to the WHO and UN, the AKA has setup a webpage to collect the comments and will hand deliver them to all parties.

**We need the help of every consumer, manufacturer, distributor, and retail shop to do please go to this link and submit your personal kratom story: https://www.protectkratom.org/whocomments**

Make no mistake, we must act now or lose kratom forever.

Thank you for your willingness to help in this fight. [5]

### *The Products Include Implied Disease Claims*

38.    A dietary supplement manufacturer such as Defendant may not explicitly or implicitly claim that a dietary ingredient can, among other things, mitigate or prevent a disease or class of diseases. 21 U.S.C. 343(r)(6).

39.    Federal regulations govern dietary supplement labeling.   Under 21 C.F.R. § 101.93(f), dietary supplement labeling may, subject to various

---

[5] https://kchilldirect.com/pages/urgentfdaban  (last visited 10/20/2021).

11

**CLASS ACTION COMPLAINT**

requirements, "describe the role of a nutrient or dietary ingredient intended to affect the structure or function in humans or that characterize the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function, provided that such statements are not disease claims under paragraph (g) of this section." (emphasis added). If a product bears a "disease claim" as defined in paragraph (g), then "the product will be subject to regulation as a drug unless the claim is an authorized health claim for which the product qualifies." *Id.*

40.     In turn, under § 101.93(g), "disease claims" pertain to "damage to an organ, part, structure, or system of the body such that it does not function properly."

41.     Defendant deliberately markets its XanRelax Products with branding Defendant intends consumers to associate with the prescription-grade drug Xanax. This misleading branding is intended to induce consumers to believe the XanRelax Products offer similar medicinal benefits to the prescription-grade drug Xanax.

42.     Defendant deliberately markets its Addall Products with branding Defendant intends consumers to associate with the prescription-grade drug Adderall. This misleading branding is intended to induce consumers to believe the Addall Products offer similar medicinal benefits to the prescription-grade drug Addall.

43.     To add to its deceptive labeling and marketing, Defendant makes several more explicit implied disease claims, which are illegal under 21 C.F.R. § 101.93(g). These claims, alone or in tandem, are deceptive and violate federal regulations.

44.     Disease claims require prior approval by the FDA and may be made only for products that are approved drug products or foods under separate legal provisions that apply to claims called "health claims."[6]

---

[6] See https://www.fda.gov/regulatory-information/search-fda-guidance-documents/small-entity-compliance-guide-structurefunction-claims (Last visited June 19, 2020).

**CLASS ACTION COMPLAINT**

45.    Defendant makes the following implied disease claims that illustrate the XanRelax is intended to be used as a drug:



/
/
/
/
/
/
/
/
/

13

1
2
3
4
5
6
7
8
9
10
11
12
13



14
15
16
17
18
19
20
21
22
23
24
25



26
27
28

14

**CLASS ACTION COMPLAINT**

## RelaxAid 600mg Capsules (Pack of 2x)

RelaxAid comes from the manufacturer of the ever-popular Addall XR. It is specially formulated to help promote calm and relaxation similar to a feeling of alprazolam (generic Xanax). Wind down your day from all the stresses of the world. Relax Aid's 600mg proprietary blend - specially formulated to deliver a euphoric relaxation to help you chill the day away. RelaxAid utilizes Mitragynine, the active ingredient in Kratom that calms and elevates mood. RelaxAid is a supplement that can keep you relaxed for hours at a time.

**Features & Specifications:**

- 750mg Proprietary Blend of Mitragynine, 7-Hydroxymitraynine, 5-Hydroxtryptophan, N-acetyl-5-methoxy tryptamine, γ-Glutamylethylamide, gamma-aminobutyric acid, Gelatin Capsules, Titanium Dioxide, FD&C Blue #1
- Enhanced Mood - Uplift your mental state, fight depression.
- Promote Calmness - Achieve high-level awareness of the steps required to stay calm.
- Promotes Relaxation - Chill the day away. Reduce your anxiety with XanRelax.
- Pack of 2x

46.     Defendant has a number of extra-label statements on its website that illustrate Defendant's representations are intended to explicitly or implicitly mitigate or prevent disease for the XanRelax Products. Specifically on its website it states: "Promote Calmness – Achieve high-level awareness of the steps required to stay calm", "Promotes Relaxation- Chill the day away. Reduce your anxiety with Products", "Enhanced Mood-Uplift your mental state, fight depression", "is specifically formulated to help promote calm and relaxation similar to a feeling of alprazolam ("generic Xanax")", "specifically formulated to deliver euphoric relaxation to help you chill the day away", and "can keep you relaxed for hours at a time."

15

**CLASS ACTION COMPLAINT**

47.     These statements, taken as a whole, imply that the XanRelax can cure, prevent, or treat depression or anxiety.

48.     In addition, the specific references to "fight depression", "uplift your mental state" are specifically stated to imply the XanRelax can treat, prevent, or cure depression.

49.     When Defendant's claims are viewed in their totality both on the label and on its website, Defendant is either explicitly or implicitly claiming to mitigate or prevent disease with the XanRelax Products.

50.     Defendant makes the following implied disease claims that illustrate the Addall Products are intended to be used as a drug:



7

---

[7] https://addallxr.com/products/addall-xr-brain-booster-supplement-focus-memory-concentration (last visited October 22, 2021).

16

**CLASS ACTION COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12



8

9

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  [8] *Id.*

28  [9] *Id.*

**CLASS ACTION COMPLAINT**

- **INCREASE MENTAL FOCUS** - Completely isolate your attention to the task at hand.
- **IMPROVE CONCENTRATION** - Achieve high level awareness of the steps required to accomplish your goal.
- **INCREASE ENERGY** - Can't stop, Won't stop. More than enough energy to get the job done.
- 1 Single Dose Contains 2 Pills

[10]

51.    On Defendant's label for Addall, it states "Add Focus to your day", "Improved Concentration", "Improved Mental Focus", and "Increase Energy".

52.    Further, Defendant has a number of extra-label statements on its website that illustrate Defendant's representations are intended to explicitly or implicitly mitigate or prevent disease for the Addall Products. Specifically on its website Defendant states: "Increase mental focus-Completely isolate your attention to the task at hand", "Improve Concentration-Achieve high level awareness of the steps required to accomplish your goal", "Increase Energy-Can't Stop, Won't stop."

53.    These statements, taken as a whole, both on the label and on Defendant's website, imply that the Addall Products cure, prevent, or treat prevent attention deficit hyperactivity disorder ("ADHD").

54.    The specific representations on the website for Defendant's Addall Products, and their product labels, are specifically stated to imply the Addall Products can treat, prevent, or cure ADHD.

55.    When Defendant's claims are viewed in their totality, both on the label and on Defendant's website, they are either explicitly or implicitly claiming to mitigate or prevent disease with the Addall Products.

---

[10] *Id.*

**CLASS ACTION COMPLAINT**

56.    Plaintiff, Class Members, and any reasonable consumer would be misled by Defendant's false and misleading branding, labeling, and advertising.

57.    In sum, the claims herein made by Defendant misled consumers into believing that they can use the Products to self-diagnose and treat without the supervision of a licensed practitioner.

58.    These claims are implied disease claims under 21 C.F.R. 101.93(g)(2), and therefore the Products are misbranded under 21 U.S.C. 343(r)(6) and cannot be sold within California, Illinois, or any other state in the United States.

**Plaintiff Tasha Brown**

59.    On or about July 20, 2019, Ms. Brown purchased Addall from a CVS in Harrisburg, Illinois. Prior to and at the time of each purchase of the Product, Plaintiff Brown was exposed to, saw, and relied upon Defendant's materially misleading representations on the Product's packaging and labeling present at the CVS Pharmacy, Defendant's website, and the Amazon retail web page.  Although the Product was more expensive than other choices she viewed, Ms. Brown chose to pay the premium price based upon the various claims and promises made by Defendant regarding the Product's ADHD-related representations (as identified above), including, but not limited to, the representations that it "Add[s] Focus to your day", "Improved Concentration", "Improved Mental Focus", and it will "Increase Energy".

60.    At the time of her purchases, Ms. Brown relied on Defendant's diabetes-related factual representations on the Product's label. Ms. Brown believed that Defendant's Product, by purchasing it, would treat, cure, or prevent ADHD. Ms. Brown further believed that the Product was a legally sold supplement.

61.    Plaintiff Brown experienced no improvement in her ADHD symptoms as a result of using Defendant's Product.

**CLASS ACTION COMPLAINT**

62.    All of the representations made by Defendant regarding the Product purchased by Ms. Brown are false because the Products do not in fact treat any disease which they are deceptively marketed as treating and because Defendant did not receive FDA approval for such claims and the claims viewed in their totality implicitly or explicitly claim to mitigate, prevent disease, specifically ADHD. These claims, alone or in tandem, are deceptive and violate federal regulations.

63.    Had Plaintiff known the Products were not legally sold supplements and had she known the truth about Defendant's materially misleading representations and omissions, she would not have purchased the Products.

64.    By purchasing Defendant's illegally sold and falsely advertised Product, Plaintiff suffered injury in fact and lost money.

65.    Plaintiff would like to continue purchasing Defendant's Products if they were legally sold supplements and if Defendant's false and misleading statements were true.    Plaintiff is, however, unable to rely on Defendant's representations in deciding whether to purchase Defendant's Products in the future.

## CLASS ACTION ALLEGATIONS

66.    Plaintiff brings this action individually and as representative of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Classes:

**National Class: During the fullest period allowed by law, all persons in the United States who purchased any of the Products for personal use and not for resale within the United States (the "National Class").**

**Illinois State Subclass: During the fullest period allowed by law, all persons in the State of Illinois who purchased any of the Products for personal use and not for resale within the State of Illinois (the "Illinois Subclass").**

**CLASS ACTION COMPLAINT**

67.    Members of the classes described are referred to as "Class Members" or members of the "Classes."

68.    The following are excluded from the Classes: (1) any Judge presiding over this action and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parent has a controlling interest (as well as current or former employees, officers, and directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

69.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

70.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that individual joinder of all Class Members is impracticable. On information and belief, Class Members number in the thousands to millions. The precise number or identification of members of the Classes are presently unknown to Plaintiff but may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

71.    **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting individual members of

**CLASS ACTION COMPLAINT**

the Classes. These common questions of law or fact include, but are not limited to, the following:

a)  Whether the Products' contents are mislabeled as dietary supplements, and are being sold in violation of the FDCA;

b)  Whether Defendant is explicitly or implicitly claiming that its Products can mitigate or prevent a disease or class of diseases in violation of the FDCA;

c)  Whether Defendant's Products are misbranded because their labelling fails to include adequate directions for use;

d)  Whether Defendant knowingly made misleading statements in connection with consumer transactions that reasonable consumers were likely to rely upon to their detriment;

e)  Whether Defendant knew or should have known that the representations and advertisements regarding the Products was false and misleading;

f)  Whether Defendant's conduct violates public policy;

g)  Whether Defendant's acts and omissions violate Illinois law;

h)  Whether Plaintiff and the Class Members did not receive the benefit of their bargain when purchasing the Products;

i)  Whether the Plaintiff and the Class Members suffered monetary damages, and, if so, what is the measure of those damages;

j)  Whether Plaintiff and the Class Members are entitled to an injunction, damages, restitution, equitable relief, and other relief deemed appropriate, and, if so, the amount and nature of such relief.

72.  Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself and the other Class Members. Similar or identical statutory and common law violations, business

22

**CLASS ACTION COMPLAINT**

practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

73. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other Class Members, as each class member was subject to the same omission of material fact and misrepresentations regarding the Products' illegal ingredients and unlawful implied disease claims.   Plaintiff shares the aforementioned facts and legal claims or questions with Class Members, and Plaintiff and all Class Members have been similarly affected by Defendant's common course of conduct alleged herein. Plaintiff and all Class Members sustained monetary and economic injuries.

74. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Classes because she is a member of the Classes and her interests do not conflict with the interests of the Class Members she seeks to represent. Plaintiff has also retained counsel competent and experienced in complex commercial and class action litigation. Plaintiff and her counsel intend to prosecute this action vigorously for the benefit of all Class Members. Accordingly, the interests of the Class Members will be fairly and adequately protected by Plaintiff and her counsel.

75. **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).**  Absent a class action, Class Members will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for

23

**CLASS ACTION COMPLAINT**

Defendant. Accordingly, the proposed Classes satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

76. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and all Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Classes as a whole.

77. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

/

/

/

/

/

/

/

**CLASS ACTION COMPLAINT**

## CAUSES OF ACTION

### COUNT I
### Violation Of Magnuson-Moss Warranty Act
### (15 U.S.C. § 2301, *et seq.*)
### (On Behalf of Plaintiff and the National Class)

78.    Plaintiff repeats and re-allege all previous paragraphs, as if fully included herein.

79.    As previously alleged, this Court has original jurisdiction over this matter based upon the requirements of CAFA; therefore, the Court has alternate jurisdiction over Plaintiff's Magnuson-Moss claim.

80.    The Products are consumer products as defined in 15 U.S.C. § 2301(1).

81.    Plaintiff and National Class members are consumers as defined in 15 U.S.C. § 2301(3) and utilized the Products for personal and household use and not for resale or commercial purposes.

82.    Plaintiff purchased the Products costing more than $5 and his individual claims are greater than $25 as required by 15 U.S.C. §§ 2302(e) and 2310(d)(3)(A).

83.    Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

84.    The federal Magnuson-Moss Warranty Act ("MMWA" or "Act"), 15 U.S.C. §§ 2301-2312, is a consumer protection regime designed to supplement state warranty law.

85.    The MMWA provides a cause of action for breach of warranty, including the implied warranty of merchantability, or other violations of the Act. 15 U.S.C. § 2310(d)(1).

86.    The Defendant has breached their implied warranties of merchantability by failing to provide merchantable goods. The Products at issue are not merchantable or fit for their ordinary purposes because the Products contain

illegal ingredients that render them mislabeled as dietary supplements. Further, Defendant breached the express warranty for the Products making claims that were implied disease claims under 21 C.F.R. 101.93(g)(2), and therefore the Products are misbranded under 21 U.S.C. 343(r)(6).

87.    In its capacity as warrantor, and by the conduct described herein, any attempt by Defendant to limit the warranties in a manner that it does is not permitted by law.

88.    By Defendant's conduct as described herein, Defendant has failed to comply with its obligations under its implied promises, warranties, and representations.

89.    Plaintiff and the National Class fulfilled their obligations under the implied warranties and express warranties for the Products.

90.    As a result of Defendant's breach of warranties, Plaintiff and the Class Members are entitled to revoke their acceptance of the Products, obtain damages, punitive damages, equitable relief, and attorneys' fees and costs pursuant to 15 U.S.C. § 2301.

## COUNT II
### Breach of Express Warranty
**(On Behalf of the National Class and, alternatively, the Illinois Subclass)**

91.    Plaintiff repeats and re-alleges all previous paragraphs, as if fully included herein.

92.    Defendant marketed, sold, and/or distributed the Products. Plaintiff and Class Members formed a contract with Defendant at the time they purchased the Products.

93.    Defendant's labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiff and the members of the Class and Defendant.

**CLASS ACTION COMPLAINT**

94.     Defendant made claims that were implied disease claims under 21 C.F.R. 101.93(g)(2), and therefore the Products are misbranded under 21 U.S.C. 343(r)(6). This breaches the warranties made by Defendant which Plaintiff reasonably relied upon at the time of her purchase.

95.     Plaintiff and the members of the Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

96.     As a direct and proximate result of Defendant's breaches of its express warranties and their failure to conform to the Products' express representations, Plaintiff and Class Members have been damaged in the amount of the purchase price of the Products purchased and any consequential damages resulting from their purchases. Plaintiff and Class Members have suffered damages in that they did not receive the product they specifically paid for and that Defendant warranted it to be. In addition, Plaintiff and Class Members paid a premium for a product that did not conform to the Defendant's warranties.

97.     On or about November 8, 2021, Plaintiff gave notice to Defendant that outlined Defendant's breaches of the express warranty for the Products. Plaintiff never received a response from Defendant.

98.     Since that date, and after 30 days from which Defendant received notice, Defendant failed to take the corrective action requested by Plaintiff in her correspondence and Plaintiff was forced to file this action.

## COUNT III
### Breach of Implied Warranty of Merchantability
### (On Behalf of the National Class and, alternatively, the Illinois Subclass)

99.     Plaintiff repeats and re-alleges all previous paragraphs, as if fully included herein.

**CLASS ACTION COMPLAINT**

100.    Defendant, through its acts and omissions set forth herein, in the sale, marketing, and promotion of the Products, made representations to Plaintiff and the Class that, among other things, the Products were properly labeled as legal dietary supplements.

101.    Plaintiff and Class Members bought the Products manufactured, advertised, and sold by Defendant, as described herein.

102.    Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was, in the sale to Plaintiff and the Class, an implied warranty that those good were merchantable.

103.    Plaintiff and Class Members purchased the Products manufactured and marketed by Defendant by and through Defendant's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Defendant's contracts with authorized sellers, or eventual purchasers when bought from a third party. Defendant knew or had reason to know of the specific use for which the Products were purchased.

104.    However, Defendant breached the implied warranty of merchantability in that the Products are not lawfully labeled as legal dietary supplements.

105.    Plaintiffs provided Defendant with notice of the alleged breach within a reasonable time after they discovered the breach or should have discovered it.

106.    As an actual and proximate result of Defendant's conduct, Plaintiff and the Class Members did not receive goods as impliedly warranted by Defendant to be merchantable in that they did not conform to promises and affirmations made on the container or label of the Products nor are they fit for their ordinary purpose of providing the benefits as promised.

107.    Here, privity is not required because the implied warranty claim relates to food or other substances intended for human consumption by consumers, such as the Products.

**CLASS ACTION COMPLAINT**

108.   To the extent privity is required, Defendant entered into contracts with the authorized retailers from whom Plaintiff and Class Members purchased the Products, and Plaintiff and Class Members were the intended third-party beneficiaries of those contracts, an exception to the privity requirement.

109.   Plaintiff and Class Members have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the Products' purchase prices and any consequential damages resulting from their purchases.

110.   On or about November 8, 2021, Plaintiff gave notice to Defendant that outlined Defendant's breaches of the implied warranty for the Products. Plaintiff never received a response from Defendant.

111.   Since that date, and after 30 days from which Defendant received notice, Defendant failed to take the corrective action requested by Plaintiff in her correspondence and Plaintiff was forced to file this action.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of the National Class and,**
**alternatively, the Illinois Subclass)**

112.   Plaintiff repeats and re-alleges all previous paragraphs, as if fully included herein.

113.   Plaintiff and Class Members conferred benefits on Defendant by purchasing the Products at a premium price.

114.   Defendant has knowledge of its receipt of such benefits.

115.   Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class Members' purchases of the Products.

116.   Defendant's retaining these moneys under these circumstances is unjust and inequitable because Defendant falsely and misleadingly represented that Products were approved by the FDA, when they were not.

**CLASS ACTION COMPLAINT**

117.   Defendant's misrepresentations have injured Plaintiff, Class Members, and Class Members because they would not have purchased (or paid a price premium) for the Products had they known the true facts regarding the Products' ingredients.

118.   Because it is unjust and inequitable for Defendant to retain such non-gratuitous benefits conferred on it by Plaintiff, Class Members, and Subclass Members, Defendant must pay restitution to Plaintiff, Class Members, and Class Members, as ordered by the Court.

## COUNT V
### Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act
### (On Behalf of the Illinois Subclass)

119.   Plaintiff brings this count on behalf of herself and the Class and repeats and re-alleges all previous paragraphs, as if fully included herein.

120.   Plaintiff and Class members are consumers under the Illinois Consumer Fraud Act and Defendant is a "person" within the meaning of 815 Ill. Comp. Stat. 510/1(5).

121.   Defendant engaged, and continues to engage, in the wrongful conduct alleged herein in the course of trade and commerce, as defined in 815 ILCS 505/2 and 815 ILCS 510/2.

122.   815 ILCS 505/2 (Illinois Consumer Fraud Act) prohibits:

[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act,' approved August 5, 1965, in the conduct of any trade or commerce are hereby declared

30

unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

2.    815 ILCS 510/2 provides that:

a person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following: "(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; ... (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have...; (7) represents that goods or services are of a particular standard, quality, or grade... if they are not; ... [and] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

123.    Defendant's representations and omissions concerning the representations were false and/or misleading as alleged herein.

124.    Defendant's foregoing deceptive acts and practices, including its omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances. Consumers, including Plaintiff Cotton and putative Class Members, would not have purchased their Products had they known that Defendant did not receive FDA approval for such claims and the claims viewed in their totality improperly claim, implicitly or explicitly, to mitigate or prevent disease. These claims, alone or in tandem, are deceptive and violate federal regulations.

125.    Defendant's false or misleading representations and omissions were such that a reasonable consumer would attach importance to them in determining his or her purchasing decision.

126.    Defendant's false and misleading representations and omissions were made to the entire Class as they were prominently displayed on the packaging of

31

every one of the Products, the Defendant's website, and the Amazon pages for the Products.

127.  Defendant knew or should have known their representations and omissions were material and were likely to mislead consumers, including Plaintiff and the Class.

128.  Defendant's practices, acts, and course of conduct in marketing and selling the Products were and are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment.

129.  Defendant's practices, acts, and course of conduct in marketing and selling the Products did in fact deceive Plaintiff and Class Members to their detriment.

130.  Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised the Products to unwary consumers, including Plaintiff and Class Members.

131.  Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the Illinois Consumer Fraud Act.

132.  Defendant's wrongful business practices were a direct and proximate cause of actual harm to Plaintiff and to each Class member.

133.  As a direct and proximate result of Defendant's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Class members who purchased the Products would not have purchased them, or, alternatively, would have paid less for them had the truth about the Products not being approved by the FDA been disclosed. Plaintiff and the other Class members did receive the benefit of the bargain. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under 815 Ill Comp. Stat. 505/1, *et seq.*

**CLASS ACTION COMPLAINT**

134. On or about November 8, 2021, Plaintiff gave notice to Defendant that outlined Defendant's breaches of the ILCS. Plaintiff never received a response from Defendant.

135. Since that date, and after 30 days in which Defendant received notice, Defendant failed to take the corrective action requested by Plaintiff in her correspondence and Plaintiff was forced to file this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action and for judgment to be entered against Defendant as follows:

A. Enter an order certifying the proposed Class (and subclasses, if applicable), designating Plaintiff as the class representative, and designating the undersigned as class counsel;

B. Enter an order awarding Plaintiff and the Class Members their actual damages, treble damages, and/or any other form of monetary relief provided by law;

C. Declare that Defendant is financially responsible for notifying all Class Members of the problems with Products;

D. Declare that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of Products, or order Defendant to make full restitution to Plaintiff and the members of the Class;

E. Defendant shall audit and reassess all prior customer claims regarding Products, including claims previously denied in whole or in part;

F. An order awarding Plaintiff and the Classes pre-judgment and post-judgment interest as allowed under the law;

G. For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action, including expert witness fees; and

G. For such other and further relief as this Court deems just and appropriate.

33

# **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**

*/s/ Alex R. Straus*
Alex R. Straus, Esq. (SBN 321366)
280 S. Beverly Drive
Beverly Hills, CA 90212
Tel.:  (917) 471-1894
Fax:  (310) 496-3176
Email: astraus@milberg.com

Nick Suciu III*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel.:  (313) 303-3472
Fax:  (865) 522-0049
Email: nsuciu@milberg.com

Daniel K. Bryson*
J. Hunter Bryson*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
900 W. Morgan Street
Raleigh, NC, 27603
Tel:  (919) 600-5000
Fax:  (919)600-5035
Email: dbryson@milberg.com
Email: hbryson@milberg.com

**CLASS ACTION COMPLAINT**

Zoe Aaron*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
405 E. 50th Street
New York, NY 10023
Tel.:   (212) 594-5300
Fax:   (865) 522-0049
Email: zaaron@milberg.com

Russell Busch*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel.:   (866) 252-0878
Fax:   (865) 522-0049
Email: rbusch@milberg.com

***Pro hac vice* application forthcoming**

***Attorneys for the Plaintiff and the Proposed Class***

35